STATE ex rel. ROBINSON, Respondent v. GABERT, Appellant.

(169 N. W. 517).

(File No. 4385. Opinion filed Nov. 29, 1918).

**Evidence—Bastardy—Complainant's Letters Implicating Third Party, Competency.**

> In a prosecution for bastardy; complainant having testified to acts of sexual intercourse with defendant early in April, and at various times thereafter; held, that letters from complainant to a brother of defendant, offered as cross-examination of complainant, and also as part of defendant's case, dated October 17 and December 10 following (the child in question having been born December 16), which letters plainly implicated the brother as being responsible for her condition, were admissable to contradict complainant's testimony, and their exclusion was prejudicial error.

Appeal from Circuit Court, Brown County.    HON. THOMAS L. BOUCK, Judge.

Bastardy proceedings by the State, on the relation of Myrtle Robinson, against Charles Gabert. From a judgment for plaintiff, defendant appeals. Reversed.

*Williamson, Williamson & Smith,* for Appellant.

No appearance for the State.

WHITING, P. J.    Defendant was charged with being the father of the bastard child of one Myrtle Robinson. He denied

such charge, but the jury found it true, and judgment for support of child was entered against him. From such judgment he has appealed. Respondent has not appeared in this court.

Appellant questions the correctness of numerous rulings made during the course of the trial. We find it unnecessary to consider any of the errors assigned except those relating to the court's rulings in excluding from evidence certain exhibits offered by the defense. To understand the correctness of these rulings and to determine whether, if erroneous, they were prejudicial, it is necessary to examine the evidence that was received.

It appears that the child was born December 16th. The date charged for its conception was April 2d or 3d. Complainant was then a widow, 28 years of age, living with her three small children in a house in Randolph, S. D. This house consisted of two rooms on the ground floor and one above. The children slept in the upper room, and complainant in one of the lower rooms. She took men boarders, and they sometimes stayed all night. Defendant was 23 years old, and lived with his father near Randolph. She swore that he first came to her place this 2d or 3d day of April; that he came with his brother Joe, stopping on their way to the depot, where Joe took the train, defendant returning to her house; that he took her riding; that upon their return about 10 p. m. they had sexual intercourse in the house; that they had such intercourse again about a week later; that about June 1st she went to work for his father, remaining some three months; that during this latter period they had intercourse three or four times; that she did not have intercourse with any other man during that year; that defendant promised to take care of her if he got her "in a family way"; and that after she left there she never saw or heard from defendant. She admits that, after the child was born, she had a conversation with certain parties in which she thinks she told them that the child was past due. Defendant's brother Joe denies that he went to complainant's house with defendant, and defendant denies that he ever was at her home or ever had sexual intercourse with her prior to the latter part of July. There is nothing appearing in this record that, when considered in the light of what we said in the case of State v. Yeager, 169 N. W. 749, as to the evidentiary force of unsupported testimony of subsequent acts of intercourse as corroborative of evidence as to prior illicit relations,

rises to the dignity of corroborating evidence, except it be the admission of defendant that, nearly four months after the date charged, he had sexual intercourse with complainant.

As a part of the cross-examination of complainant and again as a part of his own case, defendant offered in evidence four letters which complainant admits she wrote to one Frank Gabert, a brother of defendant, and a boy of some 20 years of age. The first of these letters is dated October 17th and the last December 10th just 6 days prior to the birth of this bastard child. From the first of these letters one can but infer that illicit relations then existed between complainant and Frank. She also expresses an expectation that Frank will "be mine" by the following Saturday. In the second letter she urges Frank to come and see her, and signs herself "Mrs. Frank Gabert." In the next, about 40 days prior to her confinement, she says, "You will have to come up here tomorrow, as I am feeling blue and now I have got to find out what you are going to do." In the last letter, 10 days before her confinement, she complains of his failure to come and see her or write her and says , " 'Tis very hard to forget you after you promised to stand by me and marry me, then for you to go back on me. * * *" Certainly these letters clearly contradict her testimony, as from them it is clear that she was accusing this boy of being responsible for her condition. If her evidence on the witness stand was true, then she had attempted, in common parlance, to "rope in" this boy. In either case it is evident that she is a woman unworthy of much credence. The exclusion of these letters was certainly prejudicial. We do not believe that, with these letters before them, the jury would have returned a verdict against defendant.

The judgment appealed from is reversed.